TOWN OF WILMINGTON *vs.* DEPARTMENT OF PUBLIC UTILITIES & another.

Suffolk.   February 2, 1960. — March 3, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Equity Pleading and Practice,* Parties, Proceeding for review of decision of department of public utilities. *Municipal Corporations,* Railroad service, As representing the public interest. *Public Utilities. Railroad,* Service. *State Administrative Procedure Act. Words,* "Aggrieved party in interest."

G. L. c. 40, § 5 (16), designating certain proceedings before the department of public utilities or "other public board or commission" for the prosecution or defence of which a town may appropriate money, read with the State administrative procedure act, G. L. c. 30A, gives no

standing to a town to become a party to such a proceeding before the department or to seek judicial review of its decision under c. 25, § 5. [435–436]

G. L. c. 30A, § 1 (3) (c) and § 10 (4), authorize an agency to permit a town to intervene as a "party" in an adjudicatory proceeding before the agency; and where a petition for appeal by a town under c. 25, § 5, seeking review of a decision of the department of public utilities in an adjudicatory proceeding respecting railroad service under c. 160, §§ 128, 128A, alleged that the town, through its counsel, duly entered an appearance before the department to oppose the granting of certain relief to the railroad, "took an active part in the public hearings which were held by the department . . . by cross-examination of the railroad's witnesses, presentation of evidence on its own behalf, filing requests for rulings of law, and oral argument and the filing of a . . . brief," this court construed the town's petition as alleging that the department had permitted it to intervene as a party in the proceeding.    [437]

A petition for appeal to this court by a town under G. L. c. 25, § 5, which sought review of a decision of the department of public utilities in a proceeding initiated by a railroad under G. L. c. 160, §§ 128, 128A, respecting passenger service in the town and alleged that the department had permitted the town to intervene in the proceeding and that the town had done so, and that the department had rendered a decision adverse to the town's position and had taken no action on requests for rulings presented by the town, set forth facts sufficient to show that the town was "an aggrieved party in interest" within c. 25, § 5, and entitled thereunder to a review of the department's decision. [438–439]

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on June 4, 1959.

The case was reserved and reported by *Spalding*, J., without decision.

*Philip B. Buzzell*, for the town of Wilmington.

*James J. Kelleher*, Assistant Attorney General, for the Department of Public Utilities.

*Joseph Auerbach*, (*Neal Holland* with him,) for Boston and Maine Railroad.

SPALDING, J.   Under G. L. c. 25, § 5, the town of Wilmington filed a petition for appeal in the county court seeking a review of a decision of the department of public utilities on a petition of the Boston and Maine Railroad (hereinafter called the railroad) for the discontinuance of certain passenger stations and passenger service.   The department and the railroad demurred on the ground that the town had no stand-

ing under § 5 to obtain a review of the department's deci-
sion. No question touching the merits is involved. A single
justice of this court reported the question without decision.
The case comes here on the petition for appeal and the
demurrers.

We summarize the petition as follows: On December 5,
1958, the railroad filed a petition with the department which,
among other things, asked for its approval, under G. L. c.
160, §§ 128, 128A, and 129, to discontinue all passenger
service at the North Wilmington station on the western route
main line of its railroad; for its approval of the discon-
tinuance of all passenger trains over the portion of the west-
ern route main line between Reading station (which was to
be relocated south of Main Street in Reading) and Wilming-
ton Junction where the single track line ("wild cat" branch)
connecting with the New Hampshire route main line joins
the western route; for its approval of a plan to make the
relocated station at Reading the terminus of a shuttle pas-
senger train service between Reading and Boston and to
furnish passenger train service by a route which would by-
pass the North Wilmington station; and for its approval of
a plan to relocate the Woburn station on the so called
"Woburn loop" in such a way that no passenger trains
would operate over the remaining section of the "Woburn
loop" between Woburn and Wilmington. By these changes,
all train service between Woburn and Wilmington, and be-
tween North Wilmington and all points both north and
south was to be eliminated. The Wilmington station, lo-
cated at a distance of two and one half miles from the North
Wilmington station, was to be used by passengers now us-
ing the latter station. Both the Wilmington and North
Wilmington stations are within the town of Wilmington.

The town, through its counsel, duly entered an appearance
in opposition to the granting of those portions of the pe-
tition above set forth, and "took an active part in the public
hearings which were held by the department upon the rail-
road's petition, by cross-examination of the railroad's wit-
nesses, presentation of evidence on its own behalf, filing re-

quests for rulings of law, and oral argument and the filing of a . . . brief."

· The department entered a final decision on May 12, 1959. With respect to the western route main line, it approved the proposal for the elimination of all passenger train operations between the relocated Reading station and Wilmington Junction, and the resulting elimination of all passenger service at North Wilmington. Other portions of the plan were also approved by the department; it did, however, · order the establishment of a station and the stopping of certain trains at the crossing of the "wild cat" branch over Salem Street in North Wilmington. "No approval was ever given by the Wilmington selectmen for any of the station eliminations or relocations in Wilmington." The town presented fifteen requests for rulings but the department took no action with respect to them. See G. L. c. 25, § 5 (first paragraph).

The town argues that it has standing to seek judicial review of the department's decision by reason of G. L. c. 40, § 5, cl. 16. Section 5 provides in part that "A town may at any town meeting appropriate money for the exercise of any of its corporate powers, including the following purposes: . . . (16) For prosecuting or defending proceedings, however instituted, before a court, the department of public utilities, or any other public board or commission exercising the same or similar powers, in all matters relative or incidental to the prescribing of rates or fixing of charges by public service corporations or the exercise of rights under their franchises." This statute, the town contends, gave it the right to become a party before the department and, as the petition for appeal shows, the town exercised that right; thus, having become a party, and the decision of the department having been adverse to its position, the town is "an aggrieved party in interest" within G. L. c. 25, § 5, and may bring this petition for appeal.

The difficulty with this argument is that the premise on which it is based is unsound. We are of opinion that G. L. c. 40, § 5, cl. 16, did not undertake to define the instances

where a town might have legal standing as a party before a court, the department, or "other public board or commission." It went no farther than to provide that where, under other provisions of law, a town becomes a party in proceedings before such tribunals the town is authorized to appropriate money for prosecuting or defending the proceedings, provided they are of the sort specified in clause 16, namely, "matters relative or incidental to the prescribing of rates or fixing of charges by public service corporations or the exercise of rights under their franchises." The construction for which the town contends would mean that, whenever towns were involved in any administrative proceeding set forth in clause 16, the provisions of the State administrative procedure act (G. L. c. 30A, § 1 [3]) defining parties in adjudicatory proceedings would have no application. We recognize, of course, that clause 16 was enacted long before c. 30A. But the two statutes must be read together and a construction of clause 16 that would result in by-passing c. 30A in such an important matter as who may become parties ought to be avoided unless the legislative intent to the contrary is clear. We find no such intent. If the town has any standing to bring this petition for appeal it must be found elsewhere than in clause 16.

In *Newton* v. *Department of Pub. Util.* 339 Mass. 535, it was held that procedure before the department is now governed by the State administrative procedure act. G. L. c. 30A. And it was likewise held in that case, which involved issues similar to those before us, that the proceedings before the department were adjudicatory proceedings under c. 30A, § 1 (1), at least as to the railroads involved. Turning to § 1 (3) we find that a "party" to an adjudicatory proceeding is defined: "(a) the specifically named persons whose legal rights, duties or privileges are being determined in the proceeding; and (b) any other person who as a matter of constitutional right or by any provision of the General Laws is entitled to participate fully in the proceeding . . . and (c) any other person allowed by the agency to intervene as a party." Plainly the town does not come within (a). Al-

though "person" includes "all political subdivisions of the commonwealth" (§ 1 [4]), the town was not one of the "specifically named persons whose legal rights, duties or privileges . . . [were] being determined in the proceeding." Nor was the town a party under (b), for it was not "as a matter of constitutional right or by any provision of the General Laws . . . entitled to participate fully in the proceeding." If the town was a party, it became such under (c) as "any other person allowed by the agency to intervene." Under § 10 "agencies may . . . (4) allow any person showing that he may be substantially and specifically affected by the proceeding to intervene as a party in the whole or any portion of the proceeding, and allow any other interested person to participate by presentation of argument or in writing, or for any other limited purpose, as the agency may order." These provisions make it plain that the town could have been a party if it had been permitted to intervene. There is no express allegation in the petition that such intervention was permitted but there are allegations (not present in the petition in the *Newton* case) that strongly suggest that the department either expressly or impliedly permitted it,[1] and we shall deal with the case on that footing.

This brings us to the question, not decided in the *Newton* case, whether the town, by reason of having intervened in the proceedings before the department, has standing to petition for appeal to this court as "an aggrieved party in interest" under c. 25, § 5. In *Donham* v. *Public Serv. Commrs.* 232 Mass. 309, 328, where the court was considering St. 1913 c. 784, § 27, a predecessor of § 5, it was intimated that a town could bring a petition to challenge an order of the public service commission and that right appears to have been recognized sub silentio in *Fall River* v. *Public Serv. Commrs.* 232 Mass. 329. But in the *Donham* case it was held that in a petition for review brought by a common carrier the city of Fall River in which the carrier operated

---

See the allegations quoted above on pages 434–435.

was not a proper party, the court saying, "The public interests are entrusted to the Attorney General." That, of course, is true. But the public interests are not a homogeneous sort of thing. What may be in the best interests of one section of the community may operate as a hardship in another section. Moreover, under G. L. c. 12, § 3, the Attorney General "shall appear . . . for state departments, officers and commissions in all suits and other civil proceedings . . . in which the official acts and doings of said departments, officers and commissions are called in question . . . ." Thus, when decisions of the department of public utilities are challenged in the courts, the department, as in the case at bar, is represented by the Attorney General. But it may often happen that the decisions of the department, although considered by it to be in accordance with law and in the public interests, are not so considered by other segments of the community. In such cases the Attorney General cannot properly represent both the department and the portions of the public who desire to challenge the decision. The interests would be conflicting. The present case is a good illustration. The Attorney General, representing the department, joins with the railroad and asks that the orders of the department be affirmed. The town, on the other hand, asks that they be set aside.

We are of opinion that in appropriate cases, in the exercise of wise discretion by the department, a town may intervene in cases of this sort, and, having intervened, may in case of an adverse decision have the decision reviewed in this court under c. 25, § 5. In other words, a city or town can be "an aggrieved party in interest" under § 5. Were we to hold that a city or town could not be permitted to intervene in a proceeding before the department or to challenge its decision in this court, it might often work a great hardship on the citizens affected. That would be especially true in matters relating to public transportation, which we judicially know is a subject of great importance to persons living in the communities surrounding Boston. There is force in the argument advanced by the town that "[i]ndividual

customers of the utilities as a rule do not have the time or the means to come in as parties and defend their interests or those of the public generally. The several cities and towns in the affected area are therefore the only entities which can be expected to offer a real, practical and adversary representation of the public interest." These circumstances doubtless will be given weight by the department in considering requests by cities and towns for leave to intervene; and they will be taken into consideration by this court in reviewing the exercise of the department's discretion in such matters.

We hold therefore that the town has alleged facts sufficient to show that it was "an aggrieved party in interest" under § 5. The demurrers should be overruled.

*So ordered.*