ATTORNEY GENERAL *vs.* DEPARTMENT OF PUBLIC UTILITIES & another (and a companion case[1]).

Suffolk.   May 4, 1961. — June 5, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Railroad,* Terminal facilities.   *Public Utilities.   Equity Jurisdiction,* Review of decision of department of public utilities.   *Equity Pleading and Practice,* Parties, Proceeding for review of decision of department of public utilities.   *Jurisdiction,* Raising question of jurisdiction.   *Evidence,* Relevancy and materiality.   *Words,* "Own."

In a proceeding under G. L. c. 25, § 5, for judicial review of a decision of the department of public utilities, the question of error in the decision by reason of nonjoinder of an alleged indispensable party before the department, being jurisdictional in nature, was open although it had not been raised before the department.   [667]

A prospective purchaser of a terminal railroad station from a terminal corporation qualified under G. L. c. 160, § 131A, and owner of and operating the terminal was not an indispensable party to a proceeding before the department of public utilities for approval of the sale where by its terms the terminal corporation was to continue to operate the terminal facilities and to use the station for that purpose; nor would testimony by the purchaser as to how much he was to pay for the station and its improvement and what he planned to do with the station apart from the terminal facilities be relevant to the matter before the department.   [667–668, 668–669]

PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk on January 25, 1961, and January 26, 1961, respectively.

The cases were reserved and reported by *Spalding, J.*

[1] The companion case is by the city of Boston against the same respondents. The appeals were consolidated on the motion of the city of Boston.

*William H. Kerr,* (*Ashelen P. Senopoulos,* Assistant Corporation Counsel, with him,) for the city of Boston.

*John J. Coffey,* Special Assistant Attorney General, for the Attorney General.

*Herbert Baer,* Special Assistant Attorney General, for the Department of Public Utilities.

*Edmund M. Sweeney,* (*Arthur D. Healy* with him,) for The Boston Terminal Corporation.

SPALDING, J. The city of Boston and the Attorney General petition for an appeal from the decision of the Department of Public Utilities (Department) approving a petition of The Boston Terminal Corporation (Terminal) for permission to amend an operating agreement and to sell the South Station in Boston. See G. L. c. 25, § 5. Terminal was allowed to intervene as a respondent. A single justice reserved the cases without decision for the consideration of the full court.[1]

The facts are as follows: On June 16, 1960, Terminal filed a petition under G. L. c. 160, § 131A, for the Department's approval of an amendment of the operating agreement between Terminal, The New York, New Haven and Hartford Railroad Company, and the New York Central Railroad Company, and of Terminal's proposed sale of the South Station in Boston. On June 13, 1952, the Department had found, under the authority of G. L. c. 160, § 131A, that ownership and operation of the South Station by Terminal would be in the public interest, provided that any operating agreement entered into in connection with this operation would be subject to the Department's approval. On October 23, 1952, the Department approved an operating agreement between Terminal and the two railroads. The first part of the 1960 petition deals with a proposed amendment to the 1952 operating agreement which had given each railroad exclusive use of certain floors of the South Station and had provided for joint use of certain

---

[1] The cases were reserved on the petitions for appeal, the demurrers, the answers, and the record, including the transcript and the exhibits, which constituted the complete record before the Department.

facilities used for terminal purposes, such as the waiting room, the tracks, and the information booth.  Under the proposed amendment, the exclusive use of certain floors, which had been devoted to office space, would be eliminated, but the joint use of facilities used for terminal purposes would be continued.  After a hearing, the Department decided that the floors that had been used for offices by the two railroads were not part of the terminal facilities, that a change in the use of these floors would not alter the service to the railroads' passengers, and that such a change in the operating agreement would make possible a sale of the station with considerable tax savings to the railroads.  The Department concluded that, "[s]ince the amended Operating Agreement will not result in any reduction of service to the public and will enable the Railroads to effect large savings in operating cost, we find that the proposed amendment is reasonable."

The second part of the petition is a request for approval of the sale of the building.  Terminal challenged the Department's jurisdiction over the matter, but this objection is not now pressed.[1]  Under the terms of the proposed sale, Terminal, as grantor, reserved from the premises conveyed certain portions of the station "for so long as the . . . mortgage dated December 9, 1952, remains undischarged, or for twenty-one years from this date, whichever is less." Terminal similarly reserved the "premises and rights" to (1) appropriate toilet facilities, (2) the complete use of the faces of the southwesterly wall of the building, (3) reasonable access, and (4) maintenance and use of certain equipment and utility lines.  In addition, the prospective buyer agreed to lease the reserved premises and rights to Terminal for a period, at Terminal's option, extending forty years beyond December 8, 1977, the date when payment in full of the mortgage would, in the normal course, take place.

The Department decided that the only change in the

---

[1] In its decision the Department took the view that since the terms of a sale of terminal facilities "could well affect their operations," it must examine the terms of the sale to determine "whether the operation of the terminal facilities can be conducted properly after the consummation of the sale."

terminal facilities would be of "minor importance" and that after the sale Terminal would be "able to operate the terminal facilities in substantially the same manner as at present." It, therefore, approved the sale of the station.

The city and the Attorney General, having been permitted to participate in the proceedings (see *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, 436–439), both appeal on the ground that the Department could not approve the sale of the station because the prospective purchaser was not made a party. The city also contends that the Department "committed an error of law in not allowing counsel for the city . . . to examine the prospective purchaser . . . who was present during the hearing." Terminal, as intervener, and the Department filed answers which were essentially the same; each took the position that the Department did not err in ruling that the prospective purchaser was not required to be a party to the proceedings. Terminal also demurred to both petitions for appeal, taking the same position as that set forth in its answers; in both its answer and its demurrer to the Attorney General's petition Terminal set up the additional ground that the Attorney General had no standing to appeal.

Since, with the exception just noted, the demurrers and answers raise the same questions, there is no need to discuss the demurrers separately, for these questions will be covered by our discussion of the merits. The special ground (no standing to appeal), set up in the answer and demurrer to the Attorney General's petition, need not be dealt with for reasons presently appearing. The objections of the Attorney General are fully pressed by the city (see *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 542, n. 1). We recognize that troublesome questions may arise where the Attorney General is representing both a department or commission whose decision is called in question, and the public or some portion of it. See *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, at page 438. But since the Attorney General has certain common law responsibilities with respect to the enforcement of public

rights (see *Commonwealth* v. *Kozlowsky,* 238 Mass. 379, 390–391; *Attorney Gen.* v. *Trustees of Boston Elev. Ry.* 319 Mass. 642, 652–653), as well as the statutory duty to appear for State departments (G. L. c. 12, § 3), we are not to be understood as holding that he can never represent more than one interest. See *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25; *District Attorney for the No. Dist.* v. *Superior Court, ante,* 119; Stern, "Inconsistency" in Government Litigation, 64 Harv. L. Rev. 759; note, 62 Harv. L. Rev. 1050.

In holding that the point raised by the Attorney General (that the prospective purchaser should have been made a party) is before us on the city's petition, it becomes necessary to consider Terminal's contention that the city has not properly brought this question here. It does not appear that the city ever requested a ruling before the Department to the effect that the prospective purchaser was an indispensable party. In support of its contention, Terminal directs our attention to G. L. c. 25, § 5, which provides that "[w]hen so requested by any party interested, the commission shall rule upon any question of substantive law properly arising in the course of any proceeding before the commission . . . and any party interested aggrieved by such ruling may object thereto, and may secure a review as hereinafter provided."[1] Thus it would have been proper for the city to have raised this question at the hearing before the Department. It is the better practice for a party to raise all questions before the Department that may be the subject of review. Indeed, in most instances, such as rulings on evidence or requests for rulings and the like, the rights to a review can only be preserved if the matters were seasonably raised before the Department. It has been said that "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its

---

[1] This procedure governs, rather than that provided in the State administrative procedure act. G. L. c. 30A. See *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 543, n. 2.

ruling, and state the reasons for its action." *Unemployment Comp. Commn.* v. *Aragon,* 329 U. S. 143, 155. See Davis, Administrative Law, § 20.06. This is the rule that ordinarily prevails and is undoubtedly the reason for the above quoted sentence in § 5. But the question here (whether the prospective purchaser was an indispensable party) is jurisdictional in nature, and we are of opinion that it could be brought to this court, as it was, by an appeal from the Department's decision.[1] An analogous situation arises in equity, where a court, whether the point is raised or not, will not proceed to a final determination of a case in the absence of an indispensable party. See *First Natl. Bank* v. *Crafts,* 145 Mass. 444, 447; *Turner* v. *United Mineral Lands Corp.* 308 Mass. 531, 538–539; *Barney* v. *Baltimore City,* 6 Wall. 280, 284–285; *Gregory* v. *Stetson,* 133 U. S. 579, 585–586.

(1) Passing to the merits, the first question is whether the Department could have given its approval to the sale of the station even though the prospective purchaser was not made a party to the proceedings. The answer lies in the plain language of the statute. Section 131A of G. L. c. 160 (inserted by St. 1948, c. 639)[2] provides that any corporation organized under c. 156 "may apply to the department for an order qualifying the corporation to *acquire,* by purchase or otherwise, *and to own and operate* terminal facilities for . . . [railroads]. The corporation shall agree that its operations, when qualified hereunder, shall be subject to the jurisdiction of the department, and any operating agreements entered into in connection therewith shall be subject to the approval of the department as to their reasonableness" (emphasis supplied). If the Department finds, after public hearing, that the granting of the petition is in the public interest it shall so certify, "and the corporation shall thereupon be qualified to *own and operate*

---

[1] The third sentence in § 5 reads, "An appeal as to matters of law from any final decision, order or ruling of the commission may be taken to the supreme judicial court by an aggrieved party in interest . . . ."

[2] The background of, and reasons for, the enactment of § 131A are set forth in 1948 House Doc. No. 2360.

the . . . property used for such railroad terminal facilities'' (emphasis supplied). In 1952, Terminal qualified under this section, and there is no contention that the amendments to the operation agreement that have been approved as the result of this petition were beyond the scope of the section. But the city does argue that the prospective purchaser will, after the approved sale, own the terminal facilities and thus must receive the Department's approval. This interpretation ignores the fact that the statute by its terms applies only to a corporation seeking qualification to own and operate the facilities. The elements of ownership and operation are joined conjunctively and no approval is required for mere ownership.[1] The Department has made findings, supported by substantial evidence, that Terminal will continue to operate the terminal facilities. See *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 548. Its decision in no way transfers any authority to the prospective purchaser to take over the operations. It thus is of no significance that the prospective purchaser may now own the station, which contains but a small portion of the complete terminal facilities. If at some future time the prospective purchaser desires to operate the facilities, then, under § 131A, it would have to seek the Department's approval. Since there is no requirement that this approval be obtained now, there was no error in approving the sale without making him a party.

(2) The next contention of the city is that the Department erred in refusing to call one Goode, who was the purchaser named in the agreement of sale and was to be the principal stockholder of the corporation that would eventually take title to the property. Goode was present at the hearing and the city asked that he be ordered to take the stand. The Department denied the request. This point could very well be disposed of on the ground that the city

---

[1] No question is raised whether Terminal can still be entitled to operate the facilities if it does not own them. It should be noted, however, that the meaning of the word ''own'' may vary according to the context in which it occurs. See *Marcus* v. *Board of St. Commrs. of Boston,* 252 Mass. 331, 334; *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 333.

never saved its rights before the Department. But the result would be the same even if the question were properly before us. In support of its request that Goode be called, counsel for the city said that he wanted to question Goode about his knowledge concerning any abandonment of service, the amount he was paying for the station and for its renovation, and what he intended to do with the property. The chairman said that Goode had nothing to do with the operation of the railroad, that discontinuance of service was not an issue, and in effect concluded that Goode's testimony would not be relevant. We have already discussed the fact that the purchaser was not to be given power to operate the terminal facilities. The terms of the sale were fully set forth in documents introduced as exhibits. In these documents the rights of Terminal to continue using the station were safeguarded. The Department could very well have concluded that the proposed interrogation about how much Goode was to pay for the station and its improvement and what he planned to do with the rest of the building was not relevant. There was no error.[1]

A final decree is to be entered in each case affirming the decision of the Department.

*So ordered.*

---

[1] The Department also gave as a reason for not permitting Goode to testify the fact that he was not under summons. Since there were other grounds, discussed above, on which the exclusion of Goode's testimony may be sustained we need not decide whether this ground was correct. See Wigmore on Evidence (3d ed.) § 2199; G. L. c. 25, § 5A.