TOWN OF SUDBURY *vs.* DEPARTMENT OF PUBLIC UTILITIES & another.[1]

Suffolk.    November 10, 1961. — January 4, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Public Utilities. Electricity. Equity Jurisdiction,* Review of decision of department of public utilities. *Equity Pleading and Practice,* Parties, Proceeding for review of decision of department of public utilities. *Municipal Corporations,* As representing the public interest.

Summary of the procedure set forth in G. L. (Ter. Ed.) c. 164, § 72, and related sections of the statutes, before and by the department of public utilities in the matter of an electric company seeking authority to construct a transmission line.    [431–433]

The department of public utilities, in considering whether to authorize an electric company to construct a transmission line upon an initial petition by it under G. L. (Ter. Ed.) c. 164, § 72, or whether to authorize under § 72 necessary takings by eminent domain by the company, or whether to overrule under G. L. c. 166, § 28, as amended through St. 1961, § 466, local refusals to grant locations across public ways, exercises in each instance a separate function in a separate proceeding, in each of which public convenience and necessity must be considered, and its decision in each proceeding is a "final decision" which may be appealed separately to this court under G. L. c. 25, § 5.    [433]

A town, in which an electric company proposed to construct a transmission line and whose counsel was allowed to intervene and participate in a proceeding seeking authority to construct it initiated by the company under G. L. (Ter. Ed.) c. 164, § 72, before the department of public utilities, had standing to appeal to this court under c. 25, § 5, from a decision of the department in favor of the company.    [433–434]

———

[1] Boston Edison Company, an intervener.

G. L. (Ter. Ed.) c. 164, § 72, does not make acquisition of necessary rights in public ways and over other lands by an electric company seeking authority from the department of public utilities to construct a transmission line a prerequisite to a determination by the department that the line is necessary, will serve the public convenience, and is consistent with the public interest.   [434]

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on September 9, 1960.

The case was reserved and reported by *Kirk, J.,* without decision.

*Philip B. Buzzell,* (*Edward T. Simoneau,* Town Counsel, with him,) for the town of Sudbury.

*John J. Coffey,* Assistant Attorney General, for the Department of Public Utilities.

*William R. Cook,* for the Boston Edison Company.

CUTTER, J.   The town has appealed under G. L. c. 25, § 5 (as amended through St. 1956, c. 190), from a decision of the department determining that a seven mile electric transmission line proposed by Boston Edison Company (Edison) "is necessary for the purposes alleged [by Edison], will serve the public convenience and is consistent with the public interest."   See G. L. c. 164, § 72 (as amended through St. 1926, c. 256).   A single justice of this court has reserved and reported the case, without decision, upon the pleadings and the complete record before the department.   The town, in addition to certain procedural issues, purported to raise questions of the adequacy of the evidence before the department to justify the department's conclusions that the construction of the line "is necessary," that it "will serve the public convenience," and that it would be "consistent with the public interest."   The record before the department indicates that an effort was made to convince the department (by argument and extremely general unsworn protests of inhabitants rather than by the sworn testimony of experts and exhibits) (1) that the proposed line, because of the wide taking required and the unsightliness of the proposed construction, would adversely affect the town, its general welfare, and taxable values of property therein, and (2) that the line should be built underground (even if

at greater expense) or should follow some other route. We assume that such considerations, and all other factors affecting any phase of the public interest and public convenience, must be weighed fairly by the department in a determination under § 72. Cf. *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 546–548; *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, 438. Cf. also *Wenham* v. *Department of Pub. Util.* 333 Mass. 15, 17. No questions relating to these protests, however, have been argued by the town. Accordingly we have no occasion to discuss them.

1. Although the town in its petition alleged that it is appealing "from the final decision of the [d]epartment," it now contends that the department's decision was not a final decision from which it may take an appeal under G. L. c. 25, § 5. See c. 30A, § 14 (as amended by St. 1957, c. 193, § 1). General Laws c. 164, § 72, so far as relevant, is set out in the margin.[2]

---

[2] Section 72 reads in part, "[A] An electric company may petition the department for authority to construct and use . . . a line for the transmission of electricity for distribution in some definite area or for supplying electricity to itself or to another electric company . . . and shall represent that such line will or does serve the public convenience and is consistent with the public interest. The company shall file with such petition a general description of such transmission line and a map or plan showing the towns through which the line will or does pass and its general location. The company shall also furnish an estimate showing in reasonable detail the cost of the line and such additional maps and information as the department requires. The department, after notice and a public hearing in one or more of the towns affected, may determine that said line is necessary for the purpose alleged, and will serve the public convenience and is consistent with the public interest. [B] If the company [C] shall file with the department a map or plan of the transmission line showing [D] the towns through which it will or does pass, the public ways, railroads, railways, navigable streams and tide waters in the town named in said petition which it will cross, and the extent to which it will be located upon private land or upon, under or along public ways and places, the department, after such notice as it may direct, shall give a public hearing or hearings in one or more of the towns through which the line passes or is intended to pass and may by order authorize the company to take by eminent domain under chapter seventy-nine such lands, or such rights of way . . . , or other easements therein necessary for the construction and use or continued use as constructed . . . of such line along the route prescribed in the order of the department. . . . [E] If the department dismisses the petition at any stage in said proceedings, no further action shall be taken thereon, but the company may file a new petition after the expiration of a year from such dismissal. [F] When a taking under this section is effected, the company may forthwith, except as hereinafter provided, proceed to erect, maintain and operate thereon said line. . . . [G] No lands or rights of way or other easements therein shall be taken by eminent domain under the provisions of this section in any public way, public place, park or reservation, or within the location of any railroad, electric railroad or street railway company except

The town's doubts whether there has been "a final decision" of the department seem to arise from the somewhat confusing revisions of c. 164, § 72, since its first enactment by St. 1914, c. 742, § 128. See St. 1917, c. 141, omitting a provision authorizing the predecessor commission of the department to enter an order authorizing an electric company to construct a line; St. 1918, c. 91; G. L. c. 164, § 72 (as originally included in the General Laws); St. 1924, c. 433; St. 1925, c. 98; St. 1926, c. 256. The amendment by St. 1924, c. 433, omitted certain words at points [C] and [D] of § 72.[3] The 1924 amendment also added the final sentence of § 72, beginning at point [G].

It would serve no useful purpose to trace the changes in § 72 in detail. Precisely what procedure is contemplated by § 72, as it now stands, is not wholly clear. Nevertheless, in the light of what appears to us to be the import of the language of § 72, we interpret the section as authorizing the following action before and by the department. (1) Initially, a company wishing to build a transmission line must file with the department a petition (see point [A]) for "authority to construct and use . . . a [transmission] line." The appropriate departmental action upon such a petition, if the petition is approved after the prescribed notice and public hearing, is a determination "that . . . [the] line is necessary . . . will serve the public convenience and is consistent with the public interest." (2) If the company cannot acquire the necessary right of way by

with the consent of such company and on such terms and conditions as it may impose; and [H] no electricity shall be transmitted over any land, right of way or other easement taken by eminent domain as herein provided until the electric company shall have acquired from the board of aldermen or selectmen or from such other authorities as may have jurisdiction all necessary rights in the public ways or public places in the town or towns, or in any park or reservation, through which the line will or does pass." The letters in brackets have been inserted in the text of the section for convenience in referring to particular portions of the section.

3 At point [C] the 1924 revision of the section omitted the words "has acquired or thereafter shall acquire rights in the public ways or lanes of the towns through which said line will or does pass, or over private lands therein, for the construction of not less than one half of the total length of said line, and." At point [D] the 1924 statute omitted the words "the rights acquired, and." Other statutory changes in § 72 since 1920 do not seem of importance here.

negotiation, the company (see portion of § 72 between points [B] and [E]) may file detailed plans with the department, which then, after further notice and hearing, may "by order authorize the company to take" by eminent domain under G. L. c. 79 the necessary privately owned land, or rights of way over privately owned land. The company may file a separate petition for this authority to take land by eminent domain. If there is no occasion for an eminent domain taking (as, for example, because all necessary land can be acquired by negotiation), then the company need file no such second petition. After such an order for an eminent domain taking (see point [F]), or without such an order if no eminent domain taking is necessary, the company "may forthwith, except as hereinafter provided, proceed to erect, maintain and operate . . . [the] line." (3) The exception, just mentioned, is found in the last sentence of § 72, beginning at point [G]. Certain property there specified cannot be taken by eminent domain, and, in any event (see point [H]), no transmission of electricity over any land taken by eminent domain is to take place until the company "shall have acquired from . . . [local or] other authorities . . . all necessary rights in the public ways or public places in the town or towns, or in any park or reservation, through which the line will . . . pass." The section does not purport to prohibit construction upon land which the company owns or over which it has a right of way until the local or other authorities have given the necessary rights in public lands or ways. Nevertheless, it is probable that any company would be slow to spend large sums for construction which may prove to be wholly lost and useless if the company thereafter should be denied the necessary rights across public lands and ways.

It appears from the record that the transmission line will cross property of the Commonwealth in charge of the Department of Natural Resources (see G. L. c. 21, § 1, as amended through St. 1956, c. 620, § 1) and various public ways, railroad rights of way, and streams. The director of fisheries and game, subject to the approval of the Gov-

ernor and Council, has been authorized, but not required, in the name of the Commonwealth to sell to Edison easements over the "fisheries and game" land in Sudbury. See St. 1958, c. 419. Construction on land of the Commonwealth cannot proceed, without trespass, until the appropriate State officers, after consideration of all relevant aspects of the public interest, have granted the necessary easement. No construction across public ways can be undertaken, until such permission is given by the appropriate local authorities. See G. L. c. 166, § 21 (as amended through St. 1951, c. 476, § 1); § 22 (as amended through St. 1948, c. 550, § 36); and § 25 (as amended through St. 1951, c. 476, § 2). If such permission is not granted, Edison may then have resort to appropriate proceedings under G. L. c. 166, § 28 (as amended through St. 1961, c. 466).

The foregoing summarizes the procedure which is called for by § 72 and related sections of the statutes as we interpret them. In considering (a) whether a transmission line shall be authorized at all, upon an initial petition under § 72; (b) whether eminent domain takings, if necessary, will be authorized by order; or (c) whether to exercise its authority, under G. L. c. 166, § 28, as amended, to overrule local refusals to grant locations across public ways, the department is in each instance exercising a separate function as to which, in the light of the competent evidence before it, it must make a determination. We think that each stage of the procedure is a separate proceeding and that in each such proceeding all relevant questions of the public convenience and necessity must be considered. We think also that the decision of the department at each stage is a final decision from which an appeal may be taken under c. 25, § 5, as amended.[4] Accordingly, the town's appeal is not premature. That it has standing to take the appeal is established by *Wilmington* v. *Department of Pub. Util.* 340

---

[4] It would be premature on this record to determine what questions relating to the public convenience or the public interest may be considered upon a petition of the second type mentioned above. Chapter 166, § 28, as amended, specifically requires that (with respect to the third type of proceeding) the department, as a basis of granting a location in a town way, deem it "necessary for public convenience, and in the public interest."

Mass. 432, 436–439. Here Sudbury's town counsel was at least impliedly allowed to intervene and participate before the department in a matter of importance to the town, the interests of which were and are not otherwise represented.

We find nothing in *Selectmen of Topsfield* v. *Department of Pub. Util.* 267 Mass. 343, 347, which is inconsistent with our interpretation of the statutes already discussed.

2. The only other substantial question argued is whether the department committed error of law in failing to make findings that there had been no grants of necessary authority to cross lands of the Commonwealth and public ways. It does not appear that evidence of the absence of such grants of authority was either offered or excluded, although a passing reference was made to St. 1958, c. 419, authorizing grants of rights of way over the fisheries and game lands. Section 72 no longer (see footnote 3 and language omitted by St. 1924, c. 433) makes proof of acquisition of certain rights in public ways and over other lands a prerequisite even to the granting of an order for a taking by eminent domain. Such a showing, and findings based thereon, are also not prerequisites (see footnote 2, *supra,* portion of § 72 between points [A] and [B]) to a determination that a line is necessary, that it will serve the public convenience, and is consistent with the public interest. It may be, however, that, if evidence of the absence of grants of rights in public ways and lands (and of the reasons for such absence) had been offered, it would have been admissible as bearing upon some aspect of the public interest which the department was bound to consider. We need not now decide whether it would be error to exclude such evidence if it should be offered at a hearing upon a new petition for an order authorizing eminent domain takings.

3. There was evidence which would justify the determination of the department in respect of the matters which have been argued. A final decree is to be entered affirming the decision of the department.

*So ordered.*