Save the Bay, Inc. *vs.* Department of Public Utilities (and a companion case[1]).

Suffolk.    October 10, 1974. — January 27, 1975.

Present: Tauro, C.J., Reardon, Quirico, Hennessey, & Kaplan, JJ.

*Public Utilities. Regulation. State Administrative Procedure Act. Administrative Matter. Notice. Equity Pleading and Practice,* Parties. *Equity Jurisdiction,* Review of decision of Department of Public Utilities. *Gas. Zoning,* Public service corporation. *Corporation,* Public service corporation. *Words,* "Aggrieved party in interest."

---

[b] 308 N. E. 2d 921, 923.

[1] Manuel Pereira & others *vs.* Department of Public Utilities & another.

Save the Bay, Inc. *v.* Department of Public Utilities.

Where, in the adjudicatory proceeding before the Department of Public Utilities on a petition under G. L. c. 40A, § 10, for exemption from the local zoning ordinance of land on which it was proposed to build a liquefied natural gas facility, counsel for an unincorporated group including an owner of property abutting the proposed facility fully participated by introducing evidence and cross-examining witnesses, it was held that the abutting owner had standing as an "aggrieved party in interest" to appeal under c. 25, § 5, from a decision of the Department granting the exemption. [674-676]

Regulations of the Department of Public Utilities whereby notice of hearing on a petition for a zoning exemption under G. L. c. 40A, § 10, was given by registered mail to actual abutters of the locus involved and by publication in appropriate newspapers, without formal notice to persons living or owning property in the general vicinity of the locus, were not arbitrary on their face as distinguishing between abutters and nonabutters. [676-678]

Substantial evidence supported a conclusion by the Department of Public Utilities that a Massachusetts corporation, which, although not organized under G. L. c. 164, was a "natural gas company" within the Federal Natural Gas Act, holding a certificate of convenience and necessity from the Federal Power Commission, and which proposed to operate a facility for importation and storage of liquefied natural gas and much needed bulk distribution thereof in peak demand periods to gas distribution companies in Massachusetts and elsewhere in New England and thereby would be subject to regulation under Federal statutes and c. 164, was a "public service corporation" within c. 40A, § 10. [678-683]

Substantial evidence supported a conclusion by the Department of Public Utilities that, within G. L. c. 40A, § 10, it was "reasonably necessary for the convenience or welfare of the public" to grant an exemption from the local zoning ordinance for the operation by a "natural gas company" of a facility for importation and storage of liquefied natural gas and much needed bulk distribution thereof in peak demand periods in Massachusetts and elsewhere in New England; and it was proper for the Department to consider the public convenience or welfare of not merely Massachusetts but of New England, the area to be served by the facility. [683-687]

A decision of the Department of Public Utilities granting a zoning exemption pursuant to G. L. c. 40A, § 10, was not invalid in that the hearing in the matter was conducted by an employee of the Department pursuant to c. 25, § 4, instead of the commissioners themselves. [687-688]

Two PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on January 24, 1971, and February 2, 1972, respectively.

Demurrers were overruled by *Braucher,* J., and the cases were reserved and reported by *Quirico,* J., without decision.

*John J. Graham* for Save the Bay, Inc.

*Michael Sahady* for Manuel Pereira & others.

*Walter H. Mayo, III,* Assistant Attorney General, for the Department of Public Utilities.

*Acheson H. Callaghan, Jr.,* for the intervener, New England Liquefied Natural Gas Company, Inc.

HENNESSEY, J. These are two consolidated appeals pursuant to G. L. c. 25, § 5,[2] as amended through St. 1971, c. 485, from a decision and order of the Department of Public Utilities (the Department) granting an exemption under G. L. c. 40A, § 10, to New England LNG Company, Inc. (New England LNG), from a Fall River zoning ordinance.[3] The area involved consists of land in Fall River bordering on Mount Hope Bay on which New England LNG proposes to build a facility for the liquefaction, storage, transportation, and distribution of liquefied natural gas (LNG).[4] The first petition is brought by Save the

---

[2] The statute in pertinent part provides: "When so requested by any party interested, the commission shall rule upon any question of substantive law properly arising in the course of any proceeding before the commission or any member or members thereof, and any party interested aggrieved by such ruling may object thereto, and may secure a review as hereinafter provided. Any failure or refusal of the commission to rule upon such question at or prior to the entry of a final order or decision shall be taken and recorded as a ruling adverse to the party requesting the ruling. An appeal as to matters of law from any final decision, order or ruling of the commission may be taken to the supreme judicial court by an aggrieved party in interest by the filing of a written petition praying that the order of the commission be modified or set aside in whole or in part."

[3] In its petition before the Department, New England LNG also sought approval under G. L. c. 164, § 105A, of the manner in which gas, both propane and LNG, was to be stored, transported, and distributed in connection with the proposed facility. In *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109 (1973), we held that G. L. c. 164, § 105A, was exclusive in the regulation of the storage, transportation and distribution of gas and the pressures under which these operations are carried on, and that the proposed facility was not required to be licensed by the municipal authorities of Fall River under the provisions of G. L. c. 148, § 13, as amended through St. 1959, c. 353, § 1.

[4] The facility as proposed will be of a major nature, with a capacity to store 1,800,000 barrels of gas. It will consist of three above ground storage tanks, each with a capacity of 600,000 barrels. The tanks are to be constructed of prestressed concrete and will consist of an inner and outer tank separated by insulating material. The three tanks are to be positioned within an impounding area enclosed by a dike seventeen feet in height. The facility will also have two buildings, one for administrative offices, the other for liquefaction equipment. Two pipelines will extend from the tanks to piers in Mount Hope Bay and will

Bay, Inc., a Rhode Island nonprofit corporation; the second is filed jointly by Concerned Citizens of the South End (of Fall River), an unincorporated association, among whose members are three persons, also named in the petition as individuals who own property in the vicinity of the proposed facility.

New England LNG intervened in the proceedings and filed demurrers to the petitions for appeal on the ground that the petitioners were without standing to prosecute the appeals. The demurrers were overruled by a single justice of this court and New England LNG filed timely appeals. The original petitions for appeal, together with the intervener company's appeals from the interlocutory orders overruling its demurrers, were reserved and reported without decision by the single justice, and are before this court on the pleadings and record before the Department, including the transcript and exhibits.

The evidence in so far as it is material to the issues before this court is as follows. New England LNG is a Massachusetts corporation engaged in the business of buying, selling and distributing gas. It has been issued a temporary certificate of public convenience and necessity by the Federal Power Commission authorizing the proposed LNG service as the Department found "for a limited term pending filing for further authority upon the acquisition of additional supplies of LNG." New England LNG is the owner of, or has options on, certain parcels of land (the locus) which consist of 22.17 acres contiguous to Mount Hope Bay. New England LNG proposes to import natural gas by ships from foreign and domestic sources, to process and store it[5] at the facility, and to sell the gas in peak

be utilized to unload gas delivered by ship. Until sufficient supplies of LNG are available and construction is completed, New England LNG proposes to use one of the tanks for the storage and distribution of propane, ultimately to shift exclusively to the storage of LNG.

[5] Storage is recommended because the peak demand for natural gas in Massachusetts and New England occurs in the winter months. The Department found that direct transmission by the two pipeline companies which supply this area has been insufficient to meet increasing demand. With proper storage facilities, gas available in the lesser demand period of the summer may be collected in liquid form during the summer months, for sale and delivery to gas distribution companies in the peak demand periods of the winter months.

demand periods to gas distribution companies located throughout Massachusetts and New England.

Although the locus is within an industrial zone, the proposed facility is not included among the specifically permitted uses in the district. Hence, on July 16, 1971, New England LNG applied to the Department under G. L. c. 40A, § 10, for an exemption of the locus from the requirements of the zoning ordinance, and at the same time applied under G. L. c. 164, § 105A, for approval of the manner in which and the pressure at which gas, both propane and LNG, is to be stored, transported and distributed.

On August 5, 1971, and September 27, 1971, the Department in accordance with G. L. c. 40A, § 10, held public hearings at Boston and Fall River regarding New England LNG's application for exemption. On December 15, 1971, the Department issued a decision and order granting New England LNG an exemption from the applicable zoning ordinances and imposing certain conditions concerning the construction and operation of the facility. The major issues presented by these appeals from that order and decision involve (1) the standing of the petitioners to prosecute these appeals, more specifically whether they are "aggrieved part[ies] in interest" within the meaning of G. L. c. 25, § 5; (2) the adequacy of the notice of the proceedings given by the Department and the standards pursuant to which such notice was given; (3) whether New England LNG is a "public service corporation" eligible for exemption under G. L. c. 40A, § 10; (4) whether the Department correctly applied the standard of "reasonably necessary for the convenience or welfare of the public" required by G. L. c. 40A, § 10; and (5) whether the Department may designate a hearing officer to preside over the public hearing. We consider these issues seriatim.

1. The two demurrers filed in these appeals by the intervener New England LNG allege that the petitioner Save the Bay, Inc. (Save the Bay), is not an aggrieved party in interest for purposes of appeal under G. L. c. 25, § 5, that Concerned Citizens of the South End (Concerned Citizens), as an unincorporated association, was not a proper

party to the proceedings and moreover was not an aggrieved party in interest; and that the individual petitioners did not intervene at the public hearing and are not aggrieved parties in interest.

We conclude that the standing of Save the Bay to appeal is at best doubtful, and that Concerned Citizens has no such standing. These conclusions are not crucial, however, since the standing to appeal of at least one individual (Pereira) is clear. We add that we nevertheless have devoted careful attention to the briefs and arguments of all petitioners.

We point out that the question whether a party has standing to participate in a judicial proceeding is not simply a procedural technicality but rather involves remedial rights affecting the whole of the proceeding. Additionally, whether a party is properly before a tribunal to invoke its judicial powers affects the good order and efficiency with which the matter proceeds. We emphasize that the Department in these hearings was engaged in an adjudicatory proceeding wherein legal rights and duties were to be determined and that therefore appropriate limitations could properly be placed on those persons allowed to intervene. Similar considerations apply where appeal from an administrative order is sought before this court. Only where the parties have demonstrated the required participation in the administrative proceeding and have presented an orderly record before the agency have they properly preserved their appellate rights. The multiplicity of parties and the increased participation by persons whose rights are at best obscure will, in the absence of exact adherence to requirements as to standing, seriously erode the efficacy of the administrative process. We do not say that increased citizen participation is bad. On the contrary, such interest ensures full review of all issues. However, to preserve orderly administrative processes and judicial review thereof, a party must meet the legal requirements necessary to confer standing. We review this proceeding according to these principles.

The State Administrative Procedure Act, G. L. c. 30A, applies generally to proceedings under G. L. c. 25, § 5. *Cambridge Elec. Light Co.* v. *Department of Pub. Util.* 363 Mass. 474, 503 (1973). However, standing to appeal in this case is to be determined not by the provisions of the State Administrative Procedure Act but by G. L. c. 25, § 5, for the reason that the latter section expressly limits standing to an "aggrieved *party* in interest" (emphasis supplied). *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 544 (1959). Cf. G. L. c. 30A, § 14, which provides that "any *person* or appointing authority aggrieved by a final decision of any agency in an adjudicatory proceeding" (emphasis supplied) may seek judicial review.

Our determination whether one is a *party* to an adjudicatory proceeding, for purposes of standing to seek review of the administrative decision reached in that adjudicatory proceeding, is guided by G. L. c. 30A, § 1 (3), which defines a party to an adjudicatory proceeding as "(a) the specifically named persons whose legal rights, duties or privileges are being determined in the proceeding; and (b) any other person who as a matter of constitutional right or by any provision of the General Laws is entitled to participate fully in the proceeding, and who upon notice as required in paragraph (1) of section eleven makes an appearance; and (c) any other person allowed by the agency to intervene as a party. Agencies may by regulation not inconsistent with this section further define the classes of persons who may become parties."

Accordingly, for purposes of establishing standing to seek review under G. L. c. 25, § 5, a petition must allege either that the Department did in fact exercise its discretion pursuant to G. L. c. 30A, § 10, to admit the petitioner as an intervener; that as matter of law the petitioner was entitled to intervene before the Department and was improperly denied that right; or that the petitioner is a person who as matter of constitutional or statutory law was entitled to participate fully in the proceedings and who on proper notice did make an appearance in said proceedings.

See *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, 436 (1960).

The Department and intervener New England LNG argue that Save the Bay does not qualify under provisions (a) or (b) of G. L. c.30A, § 1 (3), and would be a party under (c) only if it had requested and been allowed to intervene in the proceedings before the Department or if such request for intervention had been improperly denied.[6] *Newton* v. *Department of Pub. Util., supra,* at 544. From this record, it does not appear that Save the Bay was in any formal sense a party before the Department or that it sought but was improperly denied leave to intervene. Save the Bay's appearance before the Department was limited to unsworn statements from two of its officers and to informal questioning of witnesses by these persons at the end of the sessions. We have reviewed the statements and inquiries made and it is not clear whether the officers were speaking as citizens of Fall River or in a representative capacity for Save the Bay. In any event, Save the Bay does not set forth in its petition any specific allegations which show either that it had been permitted to intervene or that it was entitled as of right to intervene. Accordingly, the conclusory statement in the petition that Save the Bay is an aggrieved party in interest is not admitted for purposes of the demurrer. *J. J. Gordon, Inc.* v. *Worcester Telegram Publishing Co. Inc.* 343 Mass. 142, 143 (1961).

Given the form of the petition filed by Save the Bay, more particularly its lack of precise allegation with respect to intervention, the demurrer might well have been sustained. However, on the basis of this record, we need not decide whether Save the Bay could properly have been considered an intervener because the combined petition brought by certain individuals, particularly Manuel Pereira, is sufficient to meet the standing requirements of G. L.

---

[6] Pursuant to G. L. c. 30A, § 10, the Department may "allow any person showing that he may be substantially and specifically affected by the proceeding to intervene as a party in the whole or any portion of the proceeding, and allow any other interested person to participate by presentation of argument orally or in writing, or for any other limited purpose, as the agency may order."

c. 25, § 5. Presumably the single justice applied similar reasoning in overruling the demurrers.

The latter petition alleges, and the record supports a finding, that Concerned Citizens fully participated in the proceedings before the Department by introducing evidence, cross-examining witnesses and objecting to certain evidence offered in support of the exemption, and that Manuel Pereira, an individual who owns property abutting the proposed facility, and who did receive notice of the proceeding, is a member of Concerned Citizens and did appear individually and through Concerned Citizens to record his opposition.

It is a well established principle that an unincorporated association cannot be a party to litigation. *Maria Konopnicka Soc. of the Holy Trinity Polish Roman Catholic Church* v. *Maria Konopnicka Soc.* 331 Mass. 565, 568 (1954). *McCormack* v. *Labor Relations Commn.* 358 Mass. 682, 684 (1971). Nevertheless, the record demonstrates that Concerned Citizens was throughout, by its counsel, acting for Pereira as well as itself. Furthermore, that participation was such as to confer standing to appeal on Pereira, beyond any question.

The participation by Concerned Citizens (and thus Pereira) was similar to that found sufficient to permit an appeal by the town of Wilmington under G. L. c. 25, § 5, in *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, 434-435 (1960). In that case the town counsel cross-examined the railroad's witnesses, presented evidence on the town's behalf, filed requests for rulings and submitted a brief. We noted that such participation "strongly suggest[s] that the department either expressly or impliedly permitted [intervention]." *Id.* at 437. See also *Sudbury* v. *Department of Pub. Util.* 343 Mass. 428, 434 (1962), wherein we held that the town of Sudbury was at least impliedly allowed to intervene and participate before the Department. Cf. *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 217-219 (1966). In the instant case, Concerned Citizens, through its counsel, called two expert witnesses to present evidence in its behalf and also called and ques-

Save the Bay, Inc. *v*. Department of Public Utilities.

tioned two police safety experts and a number of public witnesses. In addition, the attorney was allowed to cross-examine witnesses offered by New England LNG in support of the application. In fact, a second hearing before the Department was held in Fall River in order to allow for greater participation by interested persons including Concerned Citizens. We are of opinion that, by all of these actions, the standing of Pereira was established.

2. The petition next challenges the standard used by the Department in giving notice to interested parties;[7] formal notice by registered mail is given only to actual abutters of the locus whereas persons living or owning property in the general vicinity including persons owning property across the public way from the locus are not formally notified. The petitioners claim that this standard is arbitrary. In addition, the petitioners, citing *Ohio Bell Tel. Co.* v. *Public Util. Commn. of Ohio,* 301 U. S. 292 (1937), and *Morgan* v. *United States,* 304 U. S. 1 (1938), claim a constitutional right to be notified in order that they may be afforded an opportunity to be heard.

From the record, it appears that the Department, pursuant to regulation, has a long standing practice of notifying actual abutters by registered mail and publishing the proposed hearing date in the appropriate newspapers. The petitioners do not contend that the Department failed to give the notice required by its regulations. Rather, they argue that such notice, even if given, failed to meet the standard of reasonableness.

---

[7] Although G. L. c. 40A, § 10, provides that a zoning exemption may be granted "after public notice and hearing," it makes no specific provision as to how or to whom notice should be given. Likewise, G. L. c. 164, § 105A, provides for an order "after notice and hearing" but does not provide for any specific manner of notice. In the absence of any specific provisions with respect to the manner of notice in either of these statutes, the matter of notice is governed by G. L. c. 30A, § 11 (1), which provides: "Reasonable notice of the hearing shall be accorded all parties and shall include statements of the time and place of the hearing. Parties shall have sufficient notice of the issues involved to afford them reasonable opportunity to prepare and present evidence and argument. If the issues cannot be fully stated in advance of the hearing, they shall be fully stated as soon as practicable. In all cases of delayed statement, or where subsequent amendment of the issues is necessary, sufficient time shall be allowed after full statement or amendment to afford all parties reasonable opportunity to prepare and present evidence and argument respecting the issues."

We are unable to find this standard, which distinguishes between abutters and nonabutters with formal notice limited to the former, arbitrary on its face. It may be explained on the rational basis that abutters have a greater interest in what occurs on property contiguous to and immediately bordering their property. In addition, there is no statutory requirement that persons situate in the general area receive actual and formal notice. Cf. G. L. c. 40A, § 17, and G. L. c. 148, § 13. Notice given in compliance with Department regulations may be presumed reasonable. Cf. *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 441-442 fn. 22 (1972). However, we do not decide here whether notice which fails to inform persons substantially affected by a proposed installation may be insufficient as applied in a particular case. That question is not before us because each of these petitioners received actual notice and is thus unable to raise a claim of lack of notice.

It may, however, be appropriate for the Department to reassess its notice provisions where, as here, several parties live within fifty feet of the proposed facility. That a public way provides a slight interface between the property owner's land and the locus may not offer a sufficient buffer to the significant and substantial impact of the facility and in such circumstances it would seem quite practicable for the Department to give notice by mail. On balance, the interests involved seem to warrant such a procedure and, in certain instances, considerations of fairness might call for broader notice to interested parties.[8]

---

[8] This is not to say that every person who has been served notice may, without more, assert a right to intervene formally before the agency or claim as of right standing to commence an appeal as an aggrieved party. Cf. *Cambridge Elec. Light Co.* v. *Department of Pub. Util.* 363 Mass. 474, 489 (1973). As we previously stated, standing may be limited to those persons who have a specific and substantial interest which may be adversely affected by a decision or order and who, therefore, on preserving appellate rights, have standing to invoke this court's remedial powers. *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 544 (1959). However, a broader degree of notice may provide interested persons an opportunity to be heard before the Department. In fact G. L. c. 30A, § 10, expressly provides for limited participation by interested persons, the extent of such participation to be set by Department order. A broader notice process would, in most instances, without necessarily conferring formal standing, further full and open address of all issues.

With respect to the constitutional claim, we would note that petitioners have not alleged the deprivation of life, liberty, or property without due process of law. The opportunity to be heard depends on the existence of a constitutional right which the governmental activity may adversely affect. The petitioners allege no such right. Moreover, as the record indicates, the petitioners were afforded full and adequate opportunity to be heard.

3. The petitioners further contend that New England LNG is not a "public service corporation" and is therefore not eligible for exemption from local zoning requirements under G. L. c. 40A, § 10.[9] The Department in granting the exemption found that New England LNG was "a natural gas company within the meaning of the Federal Natural Gas Act" and "a public service corporation providing a bulk supply of propane and liquefied natural gas principally to the public utilities located in the New England area."

In light of the petitioners' specific arguments, our inquiry in this regard, where no constitutional or procedural question is presented, is limited to determining whether the Department's decision finding New England LNG a "public service corporation" is error of law. In so deciding we must determine whether the decision is "unsupported by substantial evidence." See G. L. c. 30A, § 14 (8), wherein our scope of review in such cases is set forth. Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (b). *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 548 (1959). *Malden* v. *Metropolitan Transit Authy.* 328 Mass. 491 (1952). 1954 Ann. Surv. of Mass. Law, §§ 14.18-14.22.

We held in *Mezitt* v. *Department of Pub. Util.* 354 Mass. 692 (1968), that a LNG storage and distribution facility similar in construction and purpose to the facility proposed

---

[9] The statute provides: "A building, structure or land used or *to be used by a public service corporation* may be exempted from the operation of a zoning ordinance or by-law if, upon petition of the corporation, the department of public utilities shall, after public notice and hearing, decide that the present or proposed situation of the building, structure or land in question is reasonably necessary for the convenience or welfare of the public" (emphasis supplied).

here was a public service corporation. The petitioners, however, seek to distinguish the *Mezitt* decision on the basis that the corporation in that case qualified as a "natural gas pipe line company" under G. L. c. 164, § 75B,[10] in that it held "a certificate of public convenience and necessity issued under the provisions of the federal 'Natural Gas Act' . . . authorizing it to construct a natural gas transmission line and appurtenant facilities within the commonwealth," and did supply natural gas in bulk to a number of Massachusetts gas distribution companies.[11] *Mezitt* v. *Department of Pub. Util., supra,* at 693. Whereas Tennessee Gas Transmission Company, the company involved in the *Mezitt* case, qualified as a "natural gas *pipeline* company" (emphasis supplied) under G. L. c. 164, New England LNG is considered "a natural gas company" within the meaning of the Federal Natural Gas Act, 15 U. S. C. §§ 717-717w (1970), and does not per se qualify under G. L. c. 164, § 75B

It is true that New England LNG holds only a temporary Federal certificate, authorizing the proposed LNG service "for a limited term pending filing for further authority upon the acquisition of additional supplies of LNG." Nevertheless, as the certificate demonstrates, LNG is included within the definition of natural gas as defined in 15 U. S. C. § 717a (5) (1970). The importation of LNG is currently viewed by the Federal Power Commission as an act in interstate commerce. Therefore, the importation of

---

[10] The statute provides: "Any corporation organized under the laws of the commonwealth which shall desire to construct and operate a natural gas pipe line situated wholly within the commonwealth may qualify to do business within the commonwealth as a natural gas pipe line company after hearing upon a petition filed with the department and after the department has determined that such facilities are necessary for the purpose alleged and will serve the public convenience and is consistent with the public interest. Any corporation organized under the laws of the commonwealth or of any other state or of the United States which holds a certificate of public convenience and necessity issued under the provisions of the federal 'Natural Gas Act', approved June 21, 1938, authorizing it to construct a natural gas transmission line and appurtenant facilities within the commonwealth, shall be considered as a natural gas pipe line company within the meaning of this chapter upon filing with the department a certified copy of such certificate."

[11] In fact, eighteen of the Commonwealth's gas distribution companies intervened in the *Mezitt* case and urged affirmance of the Department's decision.

LNG is deemed subject to certain of the jurisdictional powers of the Federal Power Commission. See generally *Re Columbia LNG Corp.* 95 P. U. R. 3d 145 (1972); *Re Distrigas Corp.* 99 P. U. R. 3d 512 (1973). Furthermore with respect to intrastate sales the Department in this case found, "All rates and charges to distributing companies in Massachusetts, whether by bulk delivery or by displacement through transmission pipelines, may be subject to review by this Department."

The petitioners interpret our decision in the *Mezitt* case as requiring that a gas company in order to obtain a valid exemption from local zoning ordinances be organized under G. L. c. 164 and more particularly satisfy the requirements of a natural gas pipeline company as set forth in G. L. c. 164, § 75B. Our decision in that case cannot properly be so narrowly interpreted, for we did not therein limit the definition of public service corporations as that term is applied to gas companies in general to mean exclusively gas companies organized under G. L. c. 164, specifically § 75B.[12]

The determination whether a corporation qualifies as a "public service corporation" for purposes of G. L. c. 40A, § 10, is not so strictly and precisely defined as the petitioners would suggest. Rather, we have said that among the pertinent considerations are whether the corporation is organized pursuant to an appropriate franchise from the State to provide for a necessity or convenience to the general public which could not be furnished through the ordinary channels of private business; whether the corporation is subject to the requisite degree of governmental control and regulation; and the nature of the public benefit to be derived from the service provided. See *Attorney Gen.*

---

[12] Indeed although not discussed in the briefs it is questionable whether we, as a State, could discriminate against gas companies not organized under Massachusetts law pursuant to G. L. c. 164 but subject to regulation by the Federal authorities and found to be reasonably necessary for interstate gas production and distribution. See *Mezitt* v. *Department of Pub. Util.* 354 Mass. 692, 698 (1968), citing *New York State Natural Gas Corp.* v. *Elma*, 182 F. Supp. 1 (W. D. N. Y. 1960); *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109, 120, fn. 7 (1973).

Save the Bay, Inc. *v.* Department of Public Utilities.

v. *Haverhill Gas Light Co.* 215 Mass. 394 (1913); *Wenham* v. *Department of Pub. Util.* 333 Mass. 15 (1955); *Truro* v. *Department of Pub. Util.* 365 Mass. 407, 408 (1974). We therefore examine the record to see if there was substantial evidence which accords with these considerations.

The Department specifically found a public need for an increased supply of natural gas in Massachusetts and New England.[13] It noted that the two pipeline companies supplying the New England area have not been able to meet the increased demands of the utilities. As the proposed facility would be equipped to liquefy and store natural gas collected in summer months for transportation and sale in the peak demand periods of the winter, the Department found that the facility would be providing a service sufficient to qualify it as a "public service corporation."

The petitioners contend, however, that New England LNG may never serve any citizen of the Commonwealth in that the LNG it imports could be stored for ultimate and exclusive distribution to business ventures outside the State.[14] However, we need not consider this allegation further because there was uncontradicted testimony, and the Department specifically found, that New England

[13] The Department found as follows with respect to the need for the proposed facility:

"Massachusetts and the rest of New England constitute an area in which the winter demand for gas is far greater than the summer demand, winter peaks being over ten times the summer requirements. Gas consumption in this area is growing steadily at the rate of six to eight per cent annually with the winter peaks increasing more rapidly than the summer peaks. Until recently, gas available in the summer could not economically be stored for winter use. The development of LNG technology has now provided a means for economical storage. . . . The two pipeline companies supplying the New England area have not been able to meet the increased demand of the utilities. Most utilities in this area are going into the 1971-1972 winter with the same volume of pipeline gas as they had last year (1970-71). As a result, these utilities have been forced to find substitute volumes of gas from other sources. Some utilities have been forced to curtail the sale of gas to new commercial and industrial customers. Gas could be purchased and processed into LNG in the summer period if sufficient storage space were available. With this shortage, a substitute gas for peak shaving purposes must be used until storage becomes available."

[14] This line of argument probably explains the petitioners' emphasis on the facts that New England LNG is not a gas company organized under G. L. c. 164, or a natural gas pipeline company as defined in G. L. c. 164, § 75B. There is a permanence inherent in the organization and equipment of such companies which is some guaranty of the rendering of public service.

LNG is to distribute gas to both Fall River Gas Company and Algonquin Gas Transmission Company as well as other gas distribution companies in Massachusetts and New England. The petitioners argue that no contracts or firm letters of intention were introduced by New England LNG as proof of its future plans. This argument is addressed, at best, to the weight of the evidence. It is doubtful whether, in view of the uncertainty of the future supply of available natural gas, as shown by the record, New England LNG could produce at this time more definite evidence than it did. Furthermore, the Department, if it deemed it necessary, was entitled to apply its expertise in reaching conclusions as to the probable distribution of New England LNG's product. See, e.g., G. L. c. 30A, § 11 (5), wherein it is provided that "[a]gencies may utilize their experience, technical competence, and specialized knowledge in the evaluation of the evidence presented to them."

A further consideration beyond the public supply question to be considered in deciding whether a corporation satisfies the requirements of a public service corporation is whether the corporation is subject to appropriate governmental regulation. *Truro* v. *Department of Pub. Util.* 365 Mass. 407, 410 (1974). We are of opinion that in this case proper regulation exists. First of all, New England LNG has a certificate of convenience and necessity from the Federal Power Commission.

We observe also that New England LNG has been expressly declared subject to regulation by the Department under G. L. c. 164, § 105A. See *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109, 120 (1973). It is subject to further regulation by the Department under G. L. (Ter. Ed.) c. 164, § 2, which provides that certain specified sections of G. L. c. 164 shall apply to all "private corporations which own or operate works or a distributing plant for the manufacture and sale or distribution and sale of gas" whether they are organized as gas companies under G. L. c. 164, or not. It is subject to still further regulation by the Department under G. L. c. 164, § 76A, as an affiliated company as defined in G. L. c. 164, § 85. (The Department

found that the company is affiliated with Lowell Gas Company and Gas Incorporated.)

Our decision on this aspect of the public service corporation question is in accordance with *Wenham* v. *Department of Pub. Util.* 333 Mass. 15 (1955), wherein we held that a gas company may be found to be a public service corporation and therefore in proper circumstances may be entitled to an exemption from zoning ordinances under G. L. c. 40A, § 10. Cf. *Weld* v. *Gas & Elec. Light Commrs.* 197 Mass. 556, 557 (1908); *Attorney Gen.* v. *Haverhill Gas Light Co.* 215 Mass. 394 (1913). See *Medford* v. *Marinucci Bros. & Co. Inc.* 344 Mass. 50 (1962) (railroad); ·*Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79 (1968) (electricity); *Truro* v. *Department of Pub. Util.* 365 Mass. 407 (1974) (common carrier).

We recognize that the gas companies found to be public service corporations in these decisions were organized under G. L. c. 164, or its predecessor statutes (*Weld* v. *Gas & Elec. Light Commrs., supra*), and, as the petitioner points out, New England LNG has not been so organized. However, we believe that New England LNG is subject to appropriate regulation under G. L. c. 164 and the applicable Federal statutes. Moreover it appears that New England LNG will, like the facility in the *Mezitt* case, supply gas to gas companies for distribution to the public in the Commonwealth and New England. That is of primary importance in preserving its status as a public service corporation.

4. The petitioners argue that the Department incorrectly applied the standard of reasonable necessity provided for in G. L. c. 40A, § 10, in that (a) the evidence was insufficient to support the Department's findings and order; (b) the Department did not sufficiently consider local interests and, further, did not confine its consideration of the public convenience and necessity to the Commonwealth but considered the needs of New England at large; (c) the Department failed to make a determination of every issue of fact or law necessary to its decision and therefore did not base the decision on adequate subsidiary

findings supported in the record; and (d) the Department improperly took independent notice of facts in violation of G. L. c. 30A, § 11 (5).

We consider first the petitioners' claim that the findings are not supported by the record. The decision whether a facility "is reasonably necessary for the convenience or welfare of the public," G. L. c. 40A, § 10, is a matter within the discretion of the Department. Our scope of review is, as set forth in G. L. c. 30A, § 14 (8), to determine whether the Department's decision is, inter alia, unsupported by substantial evidence.

We take note, first of all, of the substantial evidence which was received, as summarized above, on the issue whether New England LNG is a public service corporation. This evidence was relevant to the ultimate question of the convenience or welfare of the public. However, the petitioners particularly contend that the evidence is lacking in legal sufficiency in that no study was made of the general environmental impact of the facility on the bay[15] and surrounding area. Basically, they contest the evidence as it relates to safety, ecological effect, and noise and traffic levels.[16] Whether we would have deemed a more formal study advisable is irrelevant; the issue before us is whether there was evidence to support the Department's finding that the facility would not adversely affect the area.

There was testimony and further evidence offered that an accidental escape of LNG into the Bay would vaporize and then disperse in the atmosphere and that therefore, unlike a fuel oil spill, no harmful ecological effects would

---

[15] The petitioners contend that New England LNG had the burden of introducing evidence that it had obtained permission from the Coast Guard to transport its cargo by ship over the bay. The petitioners, however, make no argument that establishes that such permits are required as matter of law. In any event, in most circumstances, there is no requirement that all permits necessary to build a facility be obtained before a zoning exemption under G. L. c. 40A, § 10, may issue. *Framingham* v. *Department of Pub. Util.* 355 Mass. 138, 143-144 (1969).

[16] The petitioners also object to the introduction in evidence of certain exhibits, claiming that these exhibits were misrepresentative. However, the question of the weight to be given these exhibits is a matter to be determined by the Department and is not open to us on review.

result. With respect to the safety of the proposed facility, much testimony and several exhibits were offered which the Department could validly have relied upon, in reaching its decision as to the safety of construction and fire protection equipment and programs. The record indicates that the Department fully inquired into relevant factors to determine possible hazardous and detrimental effects of the facility. It is not for us independently to redetermine those issues. *Framingham* v. *Department of Pub. Util.* 355 Mass. 138, 146-147 (1969). In addition, the Department's order provides that the facility will be constructed in accordance with approved Department standards and further provides that safety procedures will be reviewed by the Fall River fire department. Finally, with respect to traffic sound levels, there is ample evidence both in a Department ordered study and independent testimony given at the hearing to support the Department's finding that ambient noise levels would be reasonable for human habitation, and would in all probability be within presently existing noise levels in the area.

As regards the claim that the Department improperly ignored local interests and also improperly considered the convenience or welfare of areas exclusive of the Commonwealth, including New England in general, it is settled that the Department is not completely limited to reviewing the requirements of this State alone. In determining whether an exemption is reasonably necessary for the convenience or welfare of the public "the department is empowered and required, not only to consider the effect of a new facility upon the local community and upon persons living near by, but also to weigh the public effects of the requested exemption in the State as a whole *and upon the territory served by the applicant.*" *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 592 (1964) (emphasis added). We perceive nothing in G. L. c. 40A, § 10, to suggest that the Department's consideration of the public convenience and necessity must end at the borders of the Commonwealth if the public service to be provided by New England LNG extends beyond this State. We take notice

that the fuel and energy problems of the various States, and the various regions, are inextricably interrelated in many aspects. However, the legislative policy underlying G. L. c. 40A, § 10, admittedly requires that the interests of the citizens of the Commonwealth be given appropriate weight.

In this regard, the findings, contrary to the petitioners' assertions, indicate that the Department did fully and adequately take account of the local and individual interests of the citizens of Fall River who would be affected by the proposed facility.[17] As we noted in *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109, 121 (1973), G. L. c. 40A, § 10, granting a public utility company an exemption from local zoning regulations and G. L. c. 164, § 105A, providing for State regulation of the storage, transportation, and distribution of gas "recognize the absolute interdependence of all parts of the Commonwealth and of all of its inhabitants in the matter of availability of public utility services, and they give to the Department the power to take action necessary to insure that all may obtain a reasonable measure of such vital services." At some point local interests must be balanced against the general interests of the citizenry as a whole. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 355-360 (1973). *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109, 120-121 (1973). We are not insensitive to the special

---

[17] The Department found that the locus was zoned for industrial use; that "the most appropriate location of the tanks on the site in relation to existing property of others" had been considered; that the company had "agreed to paint the tanks any light color suggested by local residents"; that New England LNG was prepared to and would be required to take all reasonable steps "to minimize the potentiality of hazard from fire"; that the facility would not cause unreasonable noise and that in any event the proposed sound levels could and would be reduced if they proved objectionable; that the facility would cause at most a very minor increase to the general traffic stream; that the trucks proposed to be used by New England LNG in transporting gas from the facility would not create "any significant additional hazard"; that the facility would have "no deleterious effect on the Mount Hope Bay area"; that the "emission of contaminants to the atmosphere by this plant [will] comply with the regulations of the Air Pollution Division of the State Department of Public Health"; and that abutters will not "encounter any increase in rates for insurance" but that if they do, New England LNG will pay the difference if it is attributable to the operation of the facility.

hardships that the proposed facility may have in its area of immediate impact. However, the Department after full hearings and with all the evidence before it, applying its expertise in this field, determined that the adverse effects of the facility were within reasonable limits. Most importantly, the Department determined that sufficient precautions could and would be taken to insure the safety of the facility. On this record, we must defer to these findings.

Adjunct to the requirement that the administrative agency's findings be based on substantial evidence is the requirement of G. L. c. 30A, § 11 (8), that the decision be "accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision." See *Westborough* v. *Department of Pub. Util.* 358 Mass. 716, 717-718 (1971); *School Comm. of Chicopee* v. *Massachusetts Commn. Against Discrimination*, 361 Mass. 352 (1972). The petitioners contend that the requirement was not met. The requirement of subsidiary findings exists so that this court may exercise its appellate function to determine whether the findings of the agency are supported by the evidence and whether, given these findings, the agency correctly applied the law to the facts so found. *Hamilton* v. *Department of Pub. Util.* 346 Mass. 130 (1963). In this case the Department's findings were adequately supported by the necessary subsidiary findings.

The petitioners also argue that the Department improperly relied on a study of traffic conditions prepared at its direction; the argument is that use of the study violated G. L. c. 30A, § 11 (5), which gives parties an opportunity to contest facts independently noticed by an administrative agency. We need not decide this claim because there is sufficient evidence in the record, independent of the study, on which the Department may have relied.

5. Finally, the petitioners argue that the decision of the Department is invalid because the commissioners did not themselves hear the witnesses or view the site. There was no error, in that the commissioners precisely followed the procedure authorized by statute. The hearing was con-

ducted by an employee of the Department, designated by the commissioners in accordance with G. L. c. 25, § 4. The Department, in its brief, appropriately compares the procedure to the situation when a court refers a case to a master. Cf. *Morgan* v. *United States,* 304 U. S. 1 (1938).

6. As we have previously stated, the failure of Save the Bay and Concerned Citizens to meet the standing requirements for appeal under G. L. c. 25, § 5, is not crucial since petitioner Pereira clearly has standing to bring this appeal. Therefore, in so far as the demurrers relate to Save the Bay and Concerned Citizens they should be sustained, and therefore the orders of the single justice are reversed; however, we affirm the order of the single justice which overruled the demurrer with respect to the individual petitioners, specifically Pereira. Judgment is to be entered affirming the decision and order of the Department.

*So ordered.*