McCann, J.
This is an appeal pursuant to G.L.c. 40A, §17, in which the plaintiffs, Robert and Denise Cottone (“Cottones”), seek to overturn a decision of the Zoning Board of Appeals of the Town of Sturbridge (“ZBA”), ordering the Cottones to take preliminary steps to bring their property in compliance with the Town of Sturbridge Zoning By-law. In addition to their Chapter 40A appeal, the Cottones also seek a judgment declaring the number of persons who may properly sit on the Town ZBA and the quantum of vote required for those individuals to overturn a decision of the Building Inspector. This case is currently before the Court on cross motions for summary judgment. For the reasons set forth below, this Court finds that (1) Cedar Lake, LLC (“Cedar Lake”) had standing to appeal the Building Inspector’s decision; (2) the ZBA may properly consist of seven members; (3) a five-person majority was a sufficient quantum of vote for the ZBA to overturn a decision of the Building Inspector; and (4) the ZBA did not exceed its authority in its September 11, 2002 decision. Accordingly, the defendants’ motions for summary judgment are ALLOWED and the plaintiffs’ cross motion is DENIED.
BACKGROUND
The undisputed facts viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
The Cottones reside at 53 Caron Road in Sturbridge, Massachusetts. Cedar Lake is the record owner of an abutting parcel of land located at 21 and 31 Caron Road. Cedar Lake is a Limited Liability Corporation, duly organized under the laws of Connecticut and comprised of four principals: Joann Caron-Prescott, Suzanne B. Caron, David A. Caron, and Christopher Caron. The company is not registered to do business in the Commonwealth.
On or about June 5, 1997, the Cottones applied to Mark Lev (“Lev"), the Town Building Inspector, for a permit to build a garage on their property. In the application, the Cottones represented, through a tape survey and sketch, that the newly constructed garage would comply with the setback requirements of the Town Zoning By-law. The By-law requires that all accessory buildings be located at least fifteen feet from the rear and side property lines. Lev issued the building permit on that same day and the Cottones erected the garage and a connecting deck sometime thereafter.
Not long after the garage was constructed, Joann Caron-Prescott hired Jalbert Engineering to perform a perimeter survey of the Cedar Lake parcel. The survey revealed that the Cottones’ garage was approximately four feet from the rear boundary line and that the attached deck encroached over that boundary line on to Cedar Lake’s property. Based on the results of this survey, Suzanne Caron made two formal complaints to Lev. In a letter dated May 1,2002, Ms. Caron notified Lev that the Cottones’ garage violated the Town’s fifteen-foot setback requirement and that the attached deck encroached upon Cedar Lake’s property. In a subsequent letter, dated May 30, 2002, Ms. Caron requested that Lev enforce the Zoning By-law. On May 10, 2002, Lev responded by letter to Cedar Lake’s request. In that letter and subsequent correspondence, Lev declined to take enforcement action in regard to either the setback violation or the encroachment issue.
On July 3,2002, Suzanne Caron and Joann Caron-Prescott, as principals for Cedar Lake, filed an Appeal of a Decision of the Building Inspector with the Town ZBA. In its appeal, Cedar Lake sought to enforce the setback violation and remedy the encroachment by the Cottones’ deck.[3] On or about August 14, 2002, the ZBA held a public hearing on the matter. The ZBA subsequently issued its findings and decision on September 11, 2002. In that decision, five of the seven members of the ZBA voted to grant the relief requested by Cedar Lake. On October 1, 2002, the Cottones filed a two-count complaint in this Court appealing the decision of the ZBA. In Count I, the Cottones assert several different theories, all alleging that the ZBA exceeded its authority in its September 11, 2002 decision and order. In Count II, the Cottones request a declaratory judgment determining whether the seven-member ZBA was properly constituted, and if so, what quantum of vote was required for it to reverse the decision of the Building Inspector.
DISCUSSION
I. Standard of Review
Summary Judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
*208 II. Standing
As a preliminary matter, this Court inquires into whether Cedar Lake had standing to bring an enforcement action to the ZBA. The Cortones contend that Cedar Lake lacked standing to bring the appeal because it failed to register, as required by G.L.c. 156C, §54, with the Secretary of State as a foreign limited liability company doing business in the Commonwealth.[4] Section 54 provides, in relevant part, that when a foreign limited liability company fails to register with the Secretary of State, “no action shall be maintained or recovery had by the foreign limited liability company in any of the courts of the commonwealth as long as such failure continues.” The Cortones derive essentially two different standing arguments from this prohibition. First, they argue that Section 54 is applicable not only to actions maintained in the courts of the Commonwealth, but also to administrative proceedings which are a prerequisite to obtaining judicial review. Second, the Cortones argue that even if Section 54 is inapplicable to administrative hearings, it would still preclude Cedar Lake from obtaining judicial review of an adverse decision of the ZBA. The Cortones then conclude that if Section 54, and the prohibitory effect thereof, is read in conjunction with the holding in Save the Bay, Inc. v. Department of Public Utilities, 366 Mass. 667 (1975), then Cedar Lake did not have standing as a “person aggrieved” under G.L.c. 40A, §8. Both of these arguments must fail.
As to the first argument, a plain reading of G.L.c. 156C, §54 does not support the Cortones’ interpretation that the statute is applicable to administrative proceedings. “Where the language of a statute is plain and unambiguous, it must be given its ordinary meaning.” Commonwealth v. Brown, 431 Mass. 772, 775 (2000). In the instant case, the plain language of Section 54 unambiguously restricts an unregistered foreign LLC from maintaining an action or recovery only in “the courts of the commonwealth . ..” (Emphasis added.) Moreover, the Cortones have not provided, nor has this Court unearthed any case law to justifty judicially expanding this statutorily restrictive language. As such, to the extent that G.L.c. 156C, §54 may be applicable to the facts of this case, it would be solely to preclude Cedar Lake from appealing an adverse decision to this Court.
To that end, it is unclear whether G.L.c. 156C, §54 would necessarily preclude a judicial appeal brought pursuant to G.L.c. 40A, §17. As a general rule, “when an issue involves an area of law governed by a specific statute with a standing requirement, that issue is governed by the standing requirements of the particular statute . . .” Harvard Square Defense Fund, Inc. v. Planning Board of Cambridge, 27 Mass.App.Ct. 491, 493 (1989), quoting Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 44-45 (1977). Chapter 40A provides specific standing requirements for review by both zoning boards of appeals and this Court. See G.L.c. 40A, §§8, 17. Indeed, Section 8, which is at issue in this case, specifically provides that “any person aggrieved” by a decision of an administrative officer, as defined under Chapter 40A, may appeal the decision by bringing an action in the zoning board of appeals. “Individual or corporate property owners acquire standing [as a person aggrieved] by asserting a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest.” Harvard Square Defense Fund, Inc., 27 Mass.App.Ct. at 492-93; see also Green v. Board of Appeals of Provincetown, 404 Mass. 571, 573 (1989) (noting that the word “aggrieved” has the same meaning throughout the Zoning Act).
In the instant case, Cedar Lake has established both a private property and legal interest specific to itself. Indeed, the record reveals that the Cortones initially encroached upon Cedar Lake’s land with the addition of a new deck, and continue to this day to violate the rear yard setback requirements of the Town Zoning By-law in an area directly abutting Cedar Lake’s property. It is in this regard that Harvard Square Defense Fund, Inc. v. Planning Board of Cambridge and Chongris v. Board of Appeals of Andover, upon which the Cortones rely, are clearly distinguishable from the case at hand. In each of those cases, the Appeals Court denied standing because the plaintiffs failed to establish themselves as abutters and asserted only "general civic interest” and “public concern.” Chongris v. Board of Appeals of Andover, 17 Mass.App.Ct. 999, 999 (1984); Harvard Square Defense Fund, Inc., 27 Mass.App.Ct. at 493. Moreover, the Cortones’ reliance on Save the Bay, Inc. v. Department of Public Utilities is equally unavailing. Although the Court in Save the Bay, Inc. did note that standing is to be adjudged based on the “whole of the proceeding,” the crux of the aggrieved person analysis in that case remained focused on “those persons who ha[d] a specific and substantial interest which may be adversely affected by a decision or order,” and not on ancillary judicial standing requirements.[5] Save the Bay, Inc., 366 Mass. at 672, 677 n8; see also Monks v. Zoning Board of Appeals of Plymouth, 37 Mass.App.Ct. 685, 687 (1994) (standing as an “aggrieved person” is a jurisdictional “prerequisite to judicial review . . .’’). As previously noted, Cedar Lake has demonstrated that it had and continues to have such an interest. As such, Cedar Lake had standing as a person aggrieved under G.L.c. 40A, §8.
Given the foregoing analysis, it is clear that whether G.L.c. 156C, §54 would preclude Cedar Lake from appealing an adverse decision of the ZBA is a issue wholly unrelated to the aggrieved person standing analysis under G.L.c. 40A, §8. Moreover, since Cedar Lake neither lacked standing under G.L.c. 40A, §8, nor initiated the current proceeding, this Court need not determine whether G.L.c. 156C, §54 would actually preclude judicial review of an adverse decision of the *209 ZBA. Indeed, the record clearly reveals that Cedar Lake obtained an order in its favor in the proceeding below and were properly brought before this Court on appeal. “The failure of a foreign limited liability company to register with the state secretary shall not prevent the foreign limited liability company from defending any action, suit or proceeding in any of the courts of the commonwealth.” G.L.c. 156C, §54. As such, Cedar Lake had standing before the ZBA and is now properly before this Court.
III. The Number of Persons Who May Properly Sit on the Zoning Board of Appeals
The Cottones next assert that the Town’s seven-member ZBA is not properly constituted. Section 12 of G.L.c. 40A is controlling on this issue as it specifically provides the mechanism for the creation of zoning boards of appeals in the Commonwealth. That section, in relevant part, states:
Zoning ordinances or by-laws shall provide for a zoning board of appeals, according to the provisions of this section, unless otherwise provided by charter. The mayor subject to confirmation of the city council, or board of selectmen shall appoint members of the board of appeals within three months of the adoption of the ordinance or by-law. Pending appointment of the members of the board of appeals, the city council or board of selectmen shall act as the board of appeals. Any board of appeals established hereunder shall consist of three or five members who, unless otherwise provided by charter, shall be appointed by the mayor . . . for terms of such length and so arranged that the term of one member shall expire each year.
(Emphasis added.) The Cottones, relying primarily on the fourth sentence of Section 12 and other related provisions of Chapter 40A, assert that the Town ZBA may consist of only three or five members. This claim is without merit. By failing to consider the first sentence of this provision and the application of the “rule of the last antecedent” therein, the Cottones misinterpret both the applicability and scope of the first clause of the fourth sentence. “The ‘rule of the last antecedent’ holds that ‘qualifying phrases are to be applied to the words or phase immediately preceding and are not to be construed as extending to others more remote.’ ” Russell v. Boston Wyman, Inc., 410 Mass. 1005, 1006 (1991), quoting United States v. Ven-Fuel, Inc., 758 F.2d 741, 751 (1st Cir. 1985).
Applying the foregoing rule, the first sentence necessarily provides that if a town elects to enact a zoning ordinance or by-law, it must thereafter establish a zoning board of appeals, which is constituted either “according to the provisions of’ this particular statute or by town charter.[6] If the board is to be constituted according to this statute, the second sentence establishes how and when the initial board of appeals is to be appointed. The third sentence then provides a mechanism for addressing appeals, prior to the cify council or board of selectmen confirming the appointment of the members of the board. The fourth sentence then provides that if any board of appeals is “established hereunder,” which again must necessarily equate to the option of establishing the board “according to the provisions of this section,” then it must consist of either three or five members. It follows, therefore, that if a board is established by charter, rather than under the provisions of this statute, it is not required to consist of three or five members. Any other interpretation would render the phrase “established hereunder” meaningless and superfluous. See Commonwealth v. Wood’s Hole, Martha’s Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967) (“None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute . . .”). Finally, as the Cottones themselves note, the “rule of the last antecedent” does not apply to the modifying clause in the remaining portion of the fourth sentence. Indeed, the inclusion of the word “who” after the word “members” indicates an intent by the Legislature to modify the mode and duration of appointment, rather than the number of members on the board of appeals. Accordingly, this Court finds that a zoning board of appeals comprised, by charter, of seven members is properly constituted.
The Quantum of Vote Required for the Zoning Board of Appeals to Take Action
Given the finding that the ZBA is properly constituted, the next inquiry focuses on what quantum of vote was necessary for the seven-member board to overturn the decision of the Building Inspector. The Cottones, noting that G.L.c. 40A, §15 provides only a vote requirement for up to a five-member board, make a fractional analysis and argue that a four-fifths vote by the board is the minimum vote allowed by statute to reverse any order or decision by a building inspector. This argument is neither supported by the legislative history nor any of the other provisions of Chapter 40A.
As an initial matter, it is worth noting that none of the other provisions contained within Chapter 40A require a four-fifths vote for a board, committee or council consisting of more than five members to take action. See G.L.c. 40A, §§5, 9, 9B, 16. Indeed, with the exception of a special proviso contained within Section 5, whenever a group exceeds a membership of five persons in any of the aforementioned provisions, the quantum of vote required to take action never exceeds two-thirds. Section 9 of G.L.c. 40A, a provision dealing with the related field of special permits, serves as a primary example of this finding. Much like Section 15, Section 9 provides that “[a] special permit issued by a special permit-granting authority shall require ... a vote of at least four members of a five-member board, and a unanimous vote of a three member vote. How *210 ever, in contrast to Section 15, Section 9 provides for ”a two-thirds vote of boards with more than five members ..." Notably, a zoning board of appeals may act as a special permit-granting authority under the auspices of G.L.c. 40A, §9. See G.L.c. 40A, §1A. Thus, in the special permit context the Legislature has already mandated that a seven-member zoning board of appeals requires only a two-thirds majority to take action. Accordingly, the only issue for this Court to determine, is whether a seven-member zoning board of appeals should have a separate and stricter standard for granting a variance or reversing a decision of a building inspector, than it has for granting a special permit.
Based on a review of the aforementioned provisions of Chapter 40A and the existing case law, this Court can find no reason to create a separate and stricter standard for granting variances or successful appeals than is already statutorily mandated for special permits. Moreover, this Court is also mindful of construing Chapter 40A as a “consistent and harmonious whole, capable of producing a rational result consonant with common sense and sound judgment.” Haines v. Town Manager of Mansfield, 320 Mass. 140, 142 (1946). Given the two-thirds voting rule enacted in G.L.c. 40A, §9 and other similar provisions, both common sense and consistency dictate that a two-thirds vote by a zoning board of appeals should be sufficient to overturn a decision of a building inspector.
Despite the foregoing, the Cottones contend that the legislative history of Chapter 40A supports a finding that the quantum of vote necessary to take action under Section 15 is greater than that for granting a special permit under Section 9. This Court disagrees. In 1920, the Legislature enacted the first Zoning Enabling Act. Martin Healy, Massachusetts Zoning Manual, §1.3.2. This Act was subsequently amended in 1933 and thereafter required municipalities to create a zoning board of appeals. Id. at §1.3.3. Under this amendment, the newly created boards were given authority to grant variances and special permits, as well as hear appeals from administrative officers. Id. A concurring vote of all members of the board was required to grant either a variance or special permit, or to reverse a decision of an administrative officer. Id. In 1955, several more amendments were made to the Zoning Enabling Act. Id. As a result of those amendments, the unanimous vote requirement for boards with more than four members was reduced to all but one of those members. Id. at §1.3.4.
In 1966, the Zoning Enabling Act, which was now codified under G.L.c. 40A, was again amended, this time reducing the required number of votes for a special permit granted by a city council. Id. As amended, Chapter 40A provided that a city council with more than five members could grant a special permit with a two-thirds vote of all the members of such council. Id. Notably, this amendment did not alter the quantum of vote required to grant a variance, special permit or appeal by a board of appeals. Rather, it distinguished only between the vote required for different special permit-granting authorities and only with regard to a city council comprised of more than five members. It was not until 1972 that this two-thirds super-majority was extended to all other special permit-granting authorities. With the exception of these two amendments for special permitrgranting authorities comprised of more than five members, the quantum of vote required to grant an appeal, variance or special permit has never differed. Consequently, there is no reason to import a separate and stricter standard, let alone an unprecedented four-fifth requirement, for a seven-person zoning board of appeals to reverse the decision of a building inspector. As such, this Court finds that only a two-thirds majority was required for the ZBA to act in this case.
IV. The Zoning Board’s Decision Was Not Based on a Legally Untenable Ground
Finally, the Cottones argue that at least two of the conditions fashioned by the ZBA in its September 11, 2002 decision were beyond its authority. Under G.L.c. 40A, §14, a board of appeals has the power to “make orders or decisions, reverse or affirm in whole or in part, or modify any order or decision, and to that end shall have all the powers of the officer from whom the appeal is taken . . .” Pursuant to this power, the ZBA implemented four conditions into its decision and order. Of concern to this proceeding are the first two conditions, which state in relevant part:
1. The subject structure (a garage) must be brought into compliance with the Zoning Bylaws, such that no portion of the structure may be within fifteen feet of the property line as established by the survey Drawing Number 01855, unless a new property line is established under Condition 3 below.
2. The deadline for submittal and approval of a plan of compliance shall be completed by November 12, 2002, after which time the Zoning Board of Appeals shall impose a non-criminal penalty of fifty dollars, under the Town’s Zoning Bylaws, Section 24.02. Each day that such a violation continues shall be deemed a separate offense.
The Cottones first argue that the conditions imposed by the ZBA require them to bring their garage into compliance within 60 days. They further contend that because of unsuccessful negotiations with Cedar Lake to purchase additional land and the lengthy process fypically associated with filing for a variance that this period was too narrow a time to accomplish the conditions of the decision. This argument misconstrues the plain language of the ZBA’s order. Although Condition I does require the Cottones to bring their garage into compliance with the Town Bylaws, it does not apply a sixfy-day time period in which to accomplish that mandate. Indeed, all that is required by the *211 order is that the Cottones submit a plan of compliance and have that plan approved within the sixty-day period. As such, the ZBA did not exceed its authority.
The Cottones next argue that implicit in the ZBA’s order is a condition that if the garage is not brought in compliance with the Town By-laws then it must be moved or tom down. They then cite to several cases in which the Supreme Judicial and Appeals Courts found this approach to be too drastic a remedy. There is, however, nothing in the ZBA’s order requiring the Cottones to either relocate or remove their garage if it is not brought in compliance with the Town By-laws. As such, this Court need not address the issue of whether such a remedy would exceed the authority of the ZBA. Based on the foregoing, the ZBA did not exceed its authority under G.L.c. 40A, §14.
ORDER
For the reasons stated herein, it is hereby ORDERED that both Cedar Lake and the Municipal Defendants’ Motions for Summary Judgment are ALLOWED and the Cottones’ Motion for Summary Judgment is DENIED. Moreover, this Court DECLARES that the seven-member Zoning Board of Appeals of the Town of Sturbridge is properly constituted. This Court FURTHER DECLARES that the seven member Zoning Board of Appeals may reverse the decision of the Town Building Inspector with a two-thirds majority vote. Judgment shall enter accordingly.

Nlie deck has since been removed by the Cottones. As such, Cedar Lake seeks only to enforce the setback requirements of the Town Zoning By-law.

Cedar Lake does not challenge the Cottones’ assertion that it was transacting business in the Commonwealth.

Indeed, the Cottones misinterpret the scope of the mle in Save the Bay, Inc. They would lead this Court to believe that a party is not aggrieved under G.L.c. 40A, §8 unless it also has standing in all respects before the Superior Court. Further review of this rule and of Newton v. Department of Pub. Util., 339 Mass. 535, 544 (1959), from which the rule originates, leads to a far less expansive interpretation. In Newton, the Supreme Judicial Court held only that “standing to seek judicial review under c. 25, §5" was limited to those persons who ’’had an interest sufficient to make it ‘aggrieved.’ “ Newton, 339 Mass, at 544. The use of the word ’’therefore" in the Save the Bay, Inc. mle evidences the Court’s intent to apply this same mle. Save the Bay, Inc., 366 Mass. 667, 677 n.8 ([Standing may be limited to those persons who have a specific and substantial interest which may be adversely affected by a decision or order and who, therefore, . . . have standing to invoke th[e] court’s remedial power) (emphasis added)). Thus, standing at the zoning board of appeals level is limited solely to an analysis of whether the party has a specific and substantial interest, such that they are a “person aggrieved” for the purposes of both G.L.c. 40A, §8 and §17. The effect of G.L.c. 156C, §54 is, therefore, irrelevant to this analysis.

This Court finds that the Town’s implementation of a provision for the creation of a zoning board of appeals in its charter is sufficient to evidence its intent to establish the board by charter rather than by the procedures laid out in G.L.c. 40A, §12.